UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :      22cv1601 (DLC)
HYPER BICYCLES, INC.,               :      22cv3308 (DLC)
                                    :
                     Plaintiff,     :
          -v-                       :
                                    :      OPINION AND ORDER
ACCTEL, LTD. and TAPESH SINHA,      :
                                    :
                     Defendants.:
                                    :
------------------------------------X
                                    :
ACCTEL, LTD.,                       :
                                    :
                     Plaintiff,     :
          -v-                       :
                                    :
HYPER BICYCLES, INC.,               :
                                    :
                     Defendant.  :
------------------------------------X

APPEARANCES:

For the plaintiff Hyper Bicycles, Inc.:
Thompson Hine LLP,(NYC)
Renee Zaytsev
Riccardo Debari
Jamie Caponera
335 Madison Avenue, Floor 12
New York, NY 10017

Ecoff Campain & Tilles, LLP
Lawrence Ecoff
280 S. Beverly Drive, Suite 504
Beverly Hills, CA 90212

For the defendant Acctel Ltd.:
Gelber & Santillo PLLC
R. Zachary Gelber
Fern Mechlowitz
52 Duane Street, 7th Floor
New York, NY 10007

DENISE COTE, District Judge:

Hyper Bicycles, Inc. ("Hyper") has brought an action to enforce a Settlement Agreement it entered with Acctel, Ltd. ("Acctel").  Acctel has moved to dismiss some but not all of the claims in Hyper's complaint.  For the following reasons, the motion is granted in part.

## Background

The following facts are taken from Hyper's complaint and documents properly considered on this motion.  The alleged facts are assumed to be true.

Hyper designs and sells bicycles and children's ride-on toys.  On June 9, 2016, Hyper and Acctel entered into a series of agreements to facilitate a business relationship in which Acctel would provide credit to Hyper for the manufacture of bicycles and facilitate that manufacture.  Through those agreements, Acctel "invested in Hyper, loaned money to Hyper, and provided Hyper with an open-ended credit facility and provided sourcing for the manufacturing of bicycles."

One of the June 9 agreements was a Supply Agreement. Under the Supply Agreement, Acctel was to assist Hyper by contracting with approved manufacturers and supplying the bicycles.  Upon receipt of a purchase order, Acctel was to produce the bicycles and receive a 5% commission on the total

purchase price.  Hyper was to pay Acctel within 120 days after the date set forth on the bill of lading for the order.

The Supply Agreement contains provisions acknowledging that Hyper is the "sole and lawful owner" of all intellectual property rights "used in connection with bicycles using the 'HYPER' brand."  Under Section V.I, the Supply Agreement states:

> [A]ll information, specifications, product design, trademarks, tradenames and descriptions (collectively, "Confidential Information") shall be maintained strictly confidential, proprietary to Hyper, and not disclosed to any third party, or used for any purpose, except as provided for and required to comply with the obligations hereunder.

The Supply Agreement selected New York law as the law governing the agreement.

Also on June 9, the parties entered into both a Stock Purchase Agreement and a Warrant Agreement.  Under the Stock Purchase Agreement, Acctel acquired 5% of the issued and outstanding shares of Hyper's common stock, which totaled to 1,053 shares ("Shares"), for $275,000.  Under the Warrant Agreement, Acctel acquired the right to purchase an additional 25% of Hyper's stock ("Warrants").

Disputes arose between the parties.  Beginning on July 7, 2021, Acctel sought to exercise its right to purchase 25% of Hyper's stock under the Warrant Agreement.  Hyper alleged that Acctel had not paid certain manufacturers, and Acctel alleged

that Hyper had failed to pay certain invoices and had breached its obligations under the Warrant Agreement.  The disputes resulted in litigation between the parties in California and New York.  As of October 2021, Hyper had failed to make payment on past due invoices totaling over $2.8 million, with additional invoices totaling over $3.2 million coming due by early January 2022.

On October 18, 2021, the parties entered into a Settlement Agreement to resolve the disputes.  Hyper agreed to repay all outstanding trade credit to Acctel and to repurchase both the common stock acquired by Acctel and Acctel's right to warrants for Hyper stock.  Specifically, Hyper agreed to pay invoices that were past due and that were set to become due by January 2022.  Two of those invoices were for payments due to Kelin, Hyper's primary manufacturer.  Hyper conditioned its payment of the two Kelin invoices, totaling $408,427.67, on Acctel providing evidence that it had made payment to Kelin ("Conditional Invoices").

Under the Settlement Agreement, Acctel agreed to sell back the Shares and its rights under the Warrant Agreement in exchange for either installment payments totaling $750,000 or a discounted, lump-sum payment of $600,000 to be paid by February 1, 2022 ("Discounted Stock Payment").  The Settlement Agreement provides that:

> Upon such payment Six Hundred Thousand Dollars
> ($600,000) on February 1, 2022, Acctel's 1,053 shares
> of common stock shall be deemed automatically and
> immediately canceled, the Warrant Agreement shall be
> deemed terminated, and Acctel shall forthwith, but no
> later than seven (7) business days of such payment,
> return the Hyper common stock to Hyper.

The parties also agreed that:

> Upon timely satisfaction of all Settlement Payments,
> Acctel agrees that it will not be entitled to occupy a
> board seat on the Hyper Board of Directors, and shall
> not be entitled to any rights or privileges as a
> shareholder of Hyper.

The Settlement Agreement also contained a New York choice

of law clause and a merger clause.  Lastly, the Settlement

Agreement confirmed that Hyper would continue to own its

intellectual property relating to its bicycles:

> The Parties agree that Hyper shall continue to own and
> maintained [sic] the copyright, trade mark, service
> mark, and intellectual property with respect to its
> products, including those designs provided to Acctel
> to manufacture for Hyper.  Nothing herein shall convey
> or transfer a license or rights to Acctel to infringe
> upon such rights of Hyper.

Hyper timely made the invoice payments required under the

Settlement Agreement.  On December 3, however, Hyper

inadvertently sent Acctel $388,978.74 without first receiving

proof that Acctel had paid that amount to Kelin.  On December

15, Hyper asked Acctel to either provide proof of payment to

Kelin or return the payment.  Acctel did neither.

On January 25, 2022, Hyper wrote to Acctel stating that

because Hyper had already paid Acctel $388,978.74, Hyper would

issue a payment of $211,021.26 by February 1, which would constitute the balance of the $600,000 owed as the Discounted Stock Payment.  This payment was wired on January 28, and that same day, Hyper demanded that Acctel return the Shares by February 8.

On January 30, Acctel rejected Hyper's request to return the Shares and terminate the Warrants.  Acctel stated that it intended to keep the December payment and refused to apply that payment towards the Discounted Stock Payment.  Acctel told Hyper that if it paid for the shares in full -- that is, the full $600,000 -- then Acctel would deliver the Shares and terminate the Warrants.

On January 31, Hyper sent Acctel an additional $388,978.74 to complete the Discounted Stock Payment.  On February 10, Hyper demanded that Acctel return the Shares.  On February 17, Acctel rejected Hyper's request.  Acctel repudiated the provisions of the Settlement Agreement that required Acctel to sell the Shares to Hyper and terminate the Warrants.  Acctel asserted that the Settlement Agreement had been made under duress and demanded that Hyper provide Acctel the financial information it needed to enforce its rights under the Warrants.  Acctel also purported to appoint Tapesh Sinha, its owner, to the Hyper Board of Directors.

Separately, Hyper alleges that after entering into the Settlement Agreement, Hyper discovered that Acctel was making three knock-offs of its bicycles.  Under the Supply Agreement, Hyper had provided Acctel with the specifications of its bicycles, and Hyper alleges that Acctel used these specifications to make its own bicycles.  For example, Hyper designed a bicycle known as the "Jet Fuel" bicycle, and Acctel began to sell its own version of the bicycle, which it first called "Jet Fuel" but later "Tailwhip Junior BMX."

On December 10, 2021, Hyper sent Acctel a Notice of Breach of Settlement Agreement in which it stated that Acctel was "manufactur[ing] products improperly using Hyper's designs and intellectual property" and demanded that Acctel cease and desist the sale of these products.  Acctel never responded to that demand.

Hyper filed the complaint against Acctel and Sinha on February 25, 2022.  Acctel filed its own action in this district against Hyper on April 22, and the cases were consolidated on May 20.  There is jurisdiction over both actions pursuant to 28 U.S.C. § 1332.

On August 2, Acctel moved to dismiss six of the eight counts pleaded against Acctel in the complaint.[1]  The

---

[1] On November 14, Hyper voluntarily dismissed its claims against Sinha.

consolidated cases were reassigned to this Court on August 17.
Acctel's motion to dismiss became fully submitted on September
26.[2]  Discovery is ongoing.

## Discussion

To survive a motion to dismiss for failure to state a
claim, the complaint "must plead enough facts to state a claim
to relief that is plausible on its face."  Green v. Dep't of
Educ. of City of New York, 16 F.4th 1070, 1076–77 (2d Cir. 2021)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged."  Charles v. Orange County, 925 F.3d 73, 81 (2d Cir.
2019) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).
"In determining if a claim is sufficiently plausible to
withstand dismissal," a court "accept[s] all factual allegations
as true" and "draw[s] all reasonable inferences in favor of the
plaintiffs."  Melendez v. City of New York, 16 F.4th 992, 1010
(2d Cir. 2021) (citation omitted).  Nevertheless, a court is
"not required to credit conclusory allegations or legal
conclusions couched as factual allegations."  Hamilton v.
Westchester County, 3 F.4th 86, 91 (2d Cir. 2021) (citation

---

[2] Hyper moved to dismiss Acctel's first amended complaint on
October 6.  The motion was denied on November 9.

omitted).  Additionally, a court may "consider extrinsic material that the complaint 'incorporate[s] by reference,' that is 'integral' to the complaint, or of which courts can take judicial notice."  Lively v. WAFRA Inv. Advisory Group, Inc., 6 F.4th 293, 305 (2d Cir. 2021) (citation omitted).

Hyper brings eight causes of action against Acctel.  Acctel has not moved to dismiss two of the claims:  the claims for breach of the Settlement Agreement and for unfair competition. A third claim seeks declaratory and injunctive relief in connection with enforcement of the Settlement Agreement.  Hyper has withdrawn its request for injunctive relief under the Settlement Agreement; Acctel's motion addressed to the request for a declaration that the Settlement Agreement is valid is easily denied.  That request for relief is an unobjectionable companion to the claim that seeks a finding that Acctel has breached the Settlement Agreement.

This Opinion will address Acctel's motion to dismiss five of Hyper's claims.  Four of those claims relate to the Settlement Agreement: they are claims for fraud, breach of the covenant of good faith and fair dealing, unjust enrichment, and conversion.  Acctel also moves to dismiss Hyper's claim that Acctel breached the Supply Agreement by selling knock-offs of Hyper's bicycles.  The parties agree that New York law governs each of Hyper's claims.

I.   Claims Related to the Settlement Agreement

    A.   Fraud

Hyper alleges that Acctel committed fraud by refusing to apply the Kelin payment, made on December 3, 2021 in the amount of $388,978.74, towards the Discounted Stock Payment.  The complaint alleges that Acctel wrongfully induced Hyper to make a second payment in that same amount by falsely representing that it would return the Shares and terminate the Warrants upon receipt of the payment.

A party alleging fraud must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  A fraud claim under New York law consists of five elements: "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages."  Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 170 (2d Cir. 2015).

Additionally, to meet Rule 9(b)'s heightened pleading standard, the complaint must detail: (1) the events giving rise to the fraud, such as the statement or omission that is alleged to be fraudulent, the identity of the speaker, when and where the statement was made, the reason the statement is fraudulent, and the facts "that give rise to a strong inference of fraudulent intent."  Id. at 171 (citation omitted); see also

Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 359 (2d Cir. 2013).
"An inference is strong if it is cogent and at least as
compelling as any opposing inference one could draw from the
facts alleged." Loreley Fin. (Jersey) No. 3 Ltd., 797 F.3d at
176–77 (citation omitted). The requisite inference of
fraudulent intent

> may be established either (a) by alleging facts to
> show that defendants had both motive and opportunity
> to commit fraud, or (b) by alleging facts that
> constitute strong circumstantial evidence of conscious
> misbehavior or recklessness.

United States v. Strock, 982 F.3d 51, 66 (2d Cir. 2020)
(citation omitted).

The complaint adequately states a claim for fraud. The
crux of the claim is that Acctel induced Hyper to send Acctel
$388,978.74 on January 31, 2022, when Acctel told Hyper that if
it sent a full Discounted Stock Payment, Acctel would comply
with the Settlement Agreement. Hyper alleges that it sent this
second payment of $388,978.74 in reliance on Acctel's
representation and that Acctel had no intention of complying
upon receipt of that payment with its obligations under the
Settlement Agreement.

In its motion, Acctel argues that the fraud claim should be
dismissed because Acctel quickly offered to return the entire
$600,000 in its letter of February 17, 2022. This argument does

not address the adequacy of the pleading of the fraud claim and therefore fails.

B.   Unjust Enrichment

Hyper's claim for unjust enrichment arises from the provision of the Settlement Agreement that conditioned Hyper's obligation to pay Acctel for the Conditional Invoices on evidence that Acctel had paid Kelin.  Through this claim, Hyper seeks recovery of the payment of $388,978.74 which it inadvertently sent to Acctel on December 3 before receiving evidence that Acctel had paid that amount to Kelin.

"To recover under a theory of unjust enrichment, a litigant must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."  Columbia Memorial Hosp. v. Hinds, 38 N.Y.3d 253, 275 (2022) (citation omitted).  "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790 (2012).

The motion to dismiss the unjust enrichment claim is denied.  As alleged in the complaint, Acctel was entitled to receive the December payment of $388,978.74 to the extent it would make it whole for money it had already paid to Kelin. Acctel has refused to provide that proof of a payment to Kelin

12

or to return the money.  This is sufficient to state a claim for unjust enrichment.

Acctel argues that this claim should be dismissed under the voluntary payment doctrine, citing Spagnola v. Chubb Corp., 574 F.3d 64 (2d Cir. 2009).  "The voluntary payment doctrine precludes a plaintiff from recovering payments made with full knowledge of the facts and with a lack of diligence in determining [its] contractual rights and obligations."  Id. at 72 (citation omitted).  "The doctrine does not apply, however, when a plaintiff made payments under a mistake of fact or law regarding the plaintiff's contractual duty to pay."  Id.  As is true with affirmative defenses generally, see Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007), a plaintiff is "not required to preemptively plead facts refuting the voluntary payment doctrine."  Spagnola, 574 F.3d at 73.

Finally, Acctel argues that this claim should be dismissed as duplicative of the claim that it breached the Settlement Agreement.  It is not duplicative.  Through this claim, Acctel is not seeking to enforce any right granted to it by the Settlement Agreement.  Hyper's claim that Acctel breached the Settlement Agreement focuses on Acctel's refusal to return the Hyper Shares and withdraw its rights to Warrants.  In any event, in its own lawsuit, Acctel argues that the Settlement Agreement is unenforceable for being executed under duress.  Whether

Acctel succeeds or not with that argument, it will still be
necessary to determine whether Acctel has wrongfully failed to
return the December payment.

    C.   Breach of Good Faith and Fair Dealing

    Hyper's claim for breach of the covenant of good faith and
fair dealing is also premised on Acctel's failure to return the
December payment of $388,978.74 or provide proof that Acctel had
paid that amount to Kelin.  "Under New York law, implicit in
every contract is a covenant of good faith and fair dealing
which encompasses any promises that a reasonable promisee would
understand to be included."  JN Contemp. Art LLC v. Phillips
Auctioneers LLC, 29 F.4th 118, 128 (2d Cir. 2022) (citation
omitted).  "A claim for violation of the covenant survives a
motion to dismiss only if it is based on allegations different
from those underlying the breach of contract claim, and the
relief sought is not intrinsically tied to the damages that flow
from the breach of contract."  Id.

    This claim also survives the motion to dismiss, for the
reasons described in connection with the claim for unjust
enrichment.  Hyper's payment of the December sum arose from
obligations created by the Settlement Agreement, but its claim
does not seek to enforce a specific provision of that contract.
Hyper has pleaded that it inadvertently sent the money before
receiving the proof Acctel was obligated to provide of a payment

14

to Kelin.  This is sufficient to state a claim that the
contract's implied covenant has been breached by Acctel.

    D.   Conversion

    Hyper's claim for conversion repeats the allegation that
Acctel has wrongfully retained the December payment of
$388,978.74 and adds that Acctel has also wrongfully converted
Hyper's Shares.

> Under New York law, conversion is the unauthorized
> assumption and exercise of the right of ownership over
> goods belonging to another to the exclusion of the
> owner's rights.  To state a claim of conversion, the
> plaintiff must allege that (1) the party charged has
> acted without authorization, and (2) exercised
> dominion or a right of ownership over property
> belonging to another, (3) the rightful owner makes a
> demand for the property, and (4) the demand for the
> return is refused.

V&A Collection, LLC v. Guzzini Props. Ltd., 46 F.4th 127, 133
(2d Cir. 2022) (citation omitted).  When a plaintiff alleges
that money was converted, "an action will lie . . . where there
is a specific, identifiable fund and an obligation to return or
otherwise treat in a particular manner the specific fund in
question."  Bascunan v. Elsaca, 874 F.3d 806, 820 n.56 (2d Cir.
2017) (citation omitted).  Funds are specifically identifiable
when the funds constitute a "specific sum" "that is determinate
and reflects an ascertained amount."  Family Health Mgmt., LLC
v. Rohan Devs., LLC, 171 N.Y.S.3d 44, 50 (1st Dep't 2022)
(citation omitted).  Conversion claims are considered "legally

insufficient" when the claim "merely restates a claim for damages for breach of contract . . . and does not allege a deprivation of any possessory interest held by [the plaintiff] in any particular property." Cronos Grp. Ltd. v. XCompIP, LLC, 64 N.Y.S.3d 180, 195 (1st Dep't 2017).

The conversion claim is dismissed to the extent that it is premised on the wrongful retention of the Shares. That claim is entirely duplicative of Hyper's claim that Acctel breached the Settlement Agreement when it failed to return the Shares. To the extent, however, that the conversion claim rests on Acctel's retention of the December payment of $388,978.74 it survives this motion to dismiss. The $388,978.74 is a specifically identifiable fund for the purposes of conversion.

Acctel argues that because the money was wired into Acctel's general bank account and combined with other funds, the $388,978.74 is not specifically identifiable. Whether funds are specifically identifiable, however, does not "turn on the nature of the account that received the funds (i.e., segregated or unsegregated), but instead on whether the money at issue was a specific sum." Family Health Mgmt., 171 N.Y.S.3d at 48. Here, Hyper has identified a specific sum that it transmitted to Acctel.

16

II.  Breach of the Supply Agreement

Hyper alleges that Acctel breached those provisions in the
Supply Agreement that protect Hyper's intellectual property by
manufacturing and selling knock-offs of Hyper's bicycles.
Acctel argues that the Supply Agreement was nullified by the
Settlement Agreement's merger clause and is unenforceable.

Under New York law, a contract "that is complete, clear and
unambiguous on its face must be enforced according to the plain
meaning of its terms." Utica Mut. Ins. Co. v. Munich
Reinsurance Am., Inc., 7 F.4th 50, 56 (2d Cir. 2021) (citation
omitted); see also Donohue v. Cuomo, 38 N.Y.3d 1, 13 (2022).

> Under New York's common-law doctrine of contract
> merger, when parties who have entered first into one
> agreement subsequently enter into a second regarding
> the same subject matter, the first agreement "merges"
> with the second, and the terms of the second agreement
> control:  It is familiar law, of course, that upon the
> execution of a valid substituted agreement, the
> original agreement merges with it and is extinguished.

NLRB v. Newark Elec. Corp., 14 F.4th 152, 166 (2d Cir. 2021)
(citation omitted).  The subsequent contract, however, must
pertain to "precisely the same subject matter" as the prior
contract.  Globe Food Servs. Corp. v. Consol. Edison of N.Y.,
584 N.Y.S.2d 820, 821 (1st Dep't 1992).  A contract "will not
supersede an earlier contract unless the subsequent contract has
definitive language indicating it revokes, cancels, or
supersedes that specific prior contract." A&E Television

17

Networks, LLC v. Pivot Point Ent., LLC, No. 10cv9422 (AJN), 2013
WL 1245453, at *10 (S.D.N.Y. Mar. 27, 2013) (quoting Globe Food
Servs. Corp., 584 N.Y.S.2d at 821).

> To determine if a particular provision is superseded
> by a provision in a subsequent contract, [courts]
> consider[]: (1) whether there is an integration and
> merger clause that explicitly indicates that the prior
> provision is superseded; (2) whether the two
> provisions have the same general purpose or address
> the same general rights; and (3) whether the two
> provisions can coexist or work in tandem.

Id. (citation omitted).

Count Seven of the complaint pleads that Hyper learned
after it executed the Settlement Agreement that Acctel had
breached the Supply Agreement by manufacturing and selling
knock-offs of Hyper's designs and intellectual property.  The
Supply Agreement contains a Whereas Clause that recognizes Hyper
as "the sole and lawful owner" of intellectual property "used in
connection with bicycles using the 'HYPER' brand."  The Supply
Agreement also provides that:

> [A]ll information, specifications, product design,
> trademarks, tradenames and descriptions (collectively,
> "Confidential Information") shall be maintained
> strictly confidential, proprietary to Hyper, and not
> disclosed to any third party, or used for any purpose,
> except as provided for and required to comply with the
> obligations hereunder.

Relevant provisions of the Settlement Agreement include the
recitation that it is intended to "resolve the pending and
threatened litigation" between the parties that arose since "the

18

execution of the Supply Agreement and Warrant Agreement."  The
parties agreed, however, "that Hyper shall continue to own and
maintain" the "intellectual property with respect to its
products, including those designs provided to Acctel to
manufacture for Hyper.  Nothing herein shall convey or transfer
a license or rights to Acctel to infringe upon such rights of
Hyper."

In a section entitled "No Modification", the Settlement
Agreement provides as follows:

> This Settlement Agreement sets forth the entire
> agreement between the Parties and may not be altered,
> amended or modified in any respect except by writing
> duly executed by the party to be charged.  This
> Settlement Agreement constitutes the entire written
> agreement between the Parties pertaining to the
> subject matter hereof, and fully supersedes any and
> all prior understandings, representations, warranties,
> and agreements between the Parties, or any of them,
> pertaining to the subject matter hereof.

The motion to dismiss the claim that Acctel has breached
the Supply Agreement is denied.  The Settlement Agreement does
not pertain to the same subject matter as the Supply Agreement.
Under the Supply Agreement, Acctel agreed to assist Hyper with
its manufacturing and extend credit.  The Settlement Agreement
pertains to specific disputes that arose between the parties
under the Supply Agreement and the Warrant Agreement.  The
contracts, therefore, do not address the same subject matter.

Further, the merger clause in the Settlement Agreement does not state that the Settlement Agreement supersedes the provisions in the Supply Agreement that relate to Hyper's right to its intellectual property.  Indeed, the Settlement Agreement reaffirms Hyper's intellectual property rights.  Lastly, Acctel maintains that the Settlement Agreement is void for duress.  If Acctel succeeds, the merger clause in the Settlement Agreement will be unenforceable.  Therefore, for each of these reasons, the complaint states a claim for breach of the Supply Agreement.

### Conclusion

Acctel's August 2, 2022 motion to dismiss is granted as to the conversion claim for the Shares.  Acctel's motion is otherwise denied.

Dated:     New York, New York
           February 28, 2023

                              _____
                                    DENISE COTE
                              United States District Judge

20